# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**HOPE MCBRIDE, on her own behalf and on behalf of those similarly situated**

  **Plaintiff,**

**v.**                    **Case No: 5:13-cv-18-Oc-22PRL**

**T & A OF CITRUS COUNTY, INC. and PAVLOS PARNOS**

  **Defendants.**

## REPORT AND RECOMMENDATION[1]

This Fair Labor Standards Act[2] case is before the Court on Pavlos Parnos's Motion to Dismiss[3] or for Summary Judgment (Doc. 69), which has been referred to me for the issuance of a Report and Recommendation. Plaintiff has filed a response in opposition, and Parnos (who is proceeding *pro se*) has filed a reply. (Docs. 72 and 75). Despite Parnos's submissions, issues of material fact remain as to enterprise coverage under the FLSA and whether Plaintiff was appropriately compensated for her employment. Accordingly, I recommend that Parnos's motion be denied.

---

[1] Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

[2] 29 U.S.C. § 201 *et seq*.

[3] Parnos previously filed a Motion to Dismiss (Doc. 5), which was the subject of a prior Report and Recommendation (Doc. 38) and Order (Doc. 40) adopting the Report and Recommendation, resulting in denial of the motion. Although Parnos's recent motion is titled "Motion to Dismiss and/or for Summary Judgment," a review of the motion and exhibits reveals that is properly construed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the Court will therefore treat it as such.

## I. BACKGROUND

Plaintiff initiated this action by filing a complaint against Defendants T & A of Citrus County, Inc., d/b/a Olive Tree Restaurant, and Parnos, individually. Parnos owns and operates the Olive Tree Restaurant in Crystal River, Florida. Defendant T & A of Citrus County, Inc., a corporate defendant, has not made an appearance in this case through counsel. However, to avoid the possibility of inconsistent judgments, the Court previously noted that it would not entertain any motion for default judgment against this corporate defendant until the case is completed. (Doc. 30). Meanwhile, the case has been proceeding against Parnos.[4]

As alleged in her Complaint (Doc. 1), Plaintiff was employed by Defendants as an hourly paid, non-exempt cook at the Olive Tree Restaurant from March 2010 until July 2012. (Doc. 1, ¶¶ 17, 20). Plaintiff alleges that she regularly worked in excess of forty (40) hours per week, and that Defendants failed to compensate her at the statutory rate of one and one-half times her regular rate for overtime as required by the FLSA. (Doc. 1, ¶ 20).

As Plaintiff states in her declaration, she served as lead cook for Defendants and worked between fifty (50) and eighty (80) hours per workweek, but was not paid an overtime premium for hours worked in excess of forty (40). (Doc. 72-1, ¶ 6). Plaintiff also states that Defendants employed numerous employees, and regularly purchased beer and wine for the purpose of selling the beverages to customers. (Doc. 72-1, ¶¶ 7, 10). Plaintiff states that all of the beer and wine offered by Defendants was bottled and manufactured outside of the state of Florida. (Doc. 72-1, ¶ 11). Plaintiff has submitted the wine and beer menu for the restaurant, featuring wines from

---

[4] In considering individuals as employers, the Eleventh Circuit has concluded "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d at 632, 637–38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983)).

California, Argentina, Greece, South Africa, and Germany, as well as sangria from Spain and beer from Germany. (Doc. 72-3).

Plaintiff states that she was responsible for catering orders, and that Defendants catered three to four events per month, receiving approximately $4,000 per month for the catering orders. Plaintiff also contends that the majority of, if not all, catering orders were paid in cash. (Doc. 72-1, ¶¶ 16-17).

Plaintiff has also submitted Defendant, T & A of Citrus County's tax returns, which reflect gross sales of $551,859 in 2010, $492,726 in 2011, and $466,028 in 2012. (Docs 72-5, 72-6, 72-7).

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court reviews "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). The Court considers the "evidence and reasonable factual inferences drawn therefrom in a light most favorable to the non-moving party." *Id.* The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is successful on this score, the non-moving party must then come forward with sufficient evidence to establish the existence of the elements on which she will bear the burden of proof at trial. *Id.* at 322-23. The non-moving party may not simply rest on the pleadings, but must use evidence such as affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of material fact that remains for trial. *Id.* at 324.

### III.    DISCUSSION

Parnos raises two arguments in support of his motion for summary judgment: (1) first, that Plaintiff's FLSA claims must fail as a matter of law because his business does not qualify for coverage under the FLSA; and (2) second, that Plaintiff's claim must fail because she cannot demonstrate that she worked in excess of forty hours per week.

#### *A.  Coverage under the FLSA*

As an initial matter, the FLSA provides that an employer must pay an employee at a rate of time and one-half his or her regular pay when he or she works in excess of forty hours per week, and either the employee "is engaged in commerce or in the production of goods for commerce" or is "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).   Thus, the FLSA does not apply unless there is either *individual coverage*, i.e., where the employee "is engaged in commerce or in the production of goods for commerce," or *enterprise coverage*, i.e., where the employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce."   *Id.*

Further, whether an enterprise is "engaged in commerce or in the production of goods for commerce" for purposes of *enterprise coverage* depends on the nature of the enterprise's commerce and its annual gross volume of sales.  First, it must have "employees engaged in commerce or in the production of goods for commerce," or it must have "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and second, it must be an enterprise with "annual gross volume of sales made or business done" in amount that is "not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated)."   29 U.S.C. § 203(s)(1); *see Polycarpe v. E & S Landscaping Serv., Inc.,* 616 F.3d 1217, 1220 (11th Cir.2010).   The statute makes clear that both

of these prongs must be met for enterprise coverage to apply. *Sandoval v. Florida Paradise Lawn Maint., Inc.*, 303 F. App'x 802, 805 (11th Cir.2008).[5]

Here, Parnos argues that Plaintiff, in her capacity as a cook, never herself engaged in interstate manufacturing or transporting of any goods or commerce, and that his restaurant is not otherwise covered by the FLSA because it does not trade in interstate commerce. Consequently, Parnos argues that Plaintiff cannot satisfy either individual or enterprise coverage. (Doc. 69, p. 8).

Parnos's argument that Plaintiff cannot establish individual coverage under the FLSA appears to have merit. The Eleventh Circuit has held that individual coverage under the FLSA does not apply where an employee, such as a cook in a small, local restaurant, is not engaged in interstate commerce because he does not use the telephone, internet, or mail as part of his duties, and his duties do not include transporting materials in interstate commerce. *Martinez v. Palace,* 414 Fed.Appx. 243, 245-46 (11th Cir. 2011). Nonetheless, Parnos's argument on this issue is beside the point, as Plaintiff appears to have abandoned any claim under individual coverage. *Compare* Doc. 72, p. 9, *with* Doc. 1, ¶ 14.

Instead, Plaintiff contends that enterprise coverage applies to Parnos and his business. (Doc. 72, p. 9). Specifically, with regard to the first prong of this coverage, Plaintiff states in her declaration that she and the restaurant's other employees regularly handled goods and materials, such as beer, wine, sangria, and olive oil, that were manufactured outside of Florida, and even outside of the United States. (Doc. 72-1, ¶¶ 10-15). Plaintiff also offers the menu for the restaurant, featuring foreign beer and wine. (Doc. 72-3). Parnos contends that the menu offered

---

[5] This analysis is critical because "[w]hether enterprise coverage exists is a question that implicates both the Court's jurisdiction and the merits of the case." *Gonzalez v. Old Lisbon Rest. & Bar L.L. C.*, 820 F.Supp.2d 1365, 1367 (S.D.Fla.2011).

by Plaintiff is not relevant because it is not the same menu used by the restaurant during Plaintiff's employment (Doc. 76, p. 3-4); however, he does not dispute the essential point – that his restaurant regularly featured goods such as foreign beer and wine that had previously traveled in interstate commerce.

Based on these facts, a reasonable factfinder could conclude that Parnos's employees (that is to also say, the restaurant's employees) regularly, if not daily, handled goods and materials that had previously traveled in interstate commerce. Thus, Plaintiff has shown that there are issues of fact in the record precluding summary judgment on the issue of enterprise liability as to the first prong of the analysis. *See Diaz v. Jaguar Restaurant Group, LLC,* 649 F.Supp.2d 1343, 1361 (S.D. Fla. 2009) (denying summary judgment on the issue of enterprise liability where plaintiff offered evidence that defendant's employees regularly handled materials, such as food products manufactured outside of Florida, that had moved in interstate commerce); *Exime v. E.W. Ventures, Inc.*, 591 F.Supp.2d 1364, 1373 (S.D.Fla. 2008) (denying summary judgment on the issue of enterprise liability where evidence demonstrated defendants' dry cleaning business purchased essential equipment, such as cleaning, pressing, and delivery equipment, out of state).

With regard to the second prong, Plaintiff offers the tax returns for the restaurant for the years 2010, 2011, and 2012 showing, respectively, $551,859, $492,726, and $466,028 in annual gross sales. (Docs 72-5, 72-6, 72-7). Plainly, this evidence demonstrates that Parnos's business met the $500,000 threshold for 2010. It is clear, therefore, that Plaintiff has offered sufficient evidence as to both prongs of the analysis to establish that Parnos's business met the requirements for enterprise coverage for 2010 and, thus, that Parnos may be accountable for 2010 under enterprise coverage. *See, e.g., Patel v. Wargo*, 803 F.2d at 632, 637–38 (11th Cir. 1986).

As to 2011 (with reported gross sales of $492,726) and 2012 (with reported gross sales of $466,028), the annual gross sales reflected on the tax returns fall short of the $500,000 threshold. Plaintiff suggests, however, that the annual gross sales reflected on the restaurant's tax returns do not accurately reflect the actual gross sales for the business. For example, Plaintiff states in her affidavit that Parnos typically earned $4,000 each month for catering events, and that the vast majority of catering was paid for in cash. (Doc. 72-1, ¶ 17). Plaintiff contends that this evidence is sufficient to create an issue of fact as to whether Parnos's business earned more than $500,000 annually. The implication is that Parnos did not accurately report the restaurant's earnings on the tax returns.

Indeed, Plaintiff argues that the tax returns reflect a discrepancy regarding salaries and wages for employees. For example, Plaintiff points out that the tax returns reflect only $61,740 in total salaries and wages for 2011, and $62,727 in total salaries and wages for 2012. (Doc. 72-6, 72-2). Plaintiff argues the tax returns are therefore inconsistent with her testimony that the restaurant typically employed between twelve (12) and fifteen (15) employees, where many were compensated "under the table, via cash only." (Doc. 72-1, ¶¶ 7-8). Plaintiff argues that this inconsistency raises material issues of fact as to whether the tax returns accurately reflect the restaurant's annual gross sales, and whether actual gross sales exceeded $500,000 in 2011 and 2012.

In a closely analogous FLSA case, *Francois v. Fried Green Tomatoes, Inc.*, 306 Fed.Appx. 443, 444-445 (11th Cir. 2008), the Eleventh Circuit held that, based on ledger sheets showing the defendant restaurant's gross sales of $466,187, $464,585, and $495,619 in respective years, the record contained sufficient evidence upon which a jury could find that the restaurant had annual gross revenues of $500,000 or more. *Id.* In reaching this conclusion, the Court considered

evidence including that some sales were not included on the ledger sheets, and that plaintiff and other employees were paid in cash and "off the books." *Id*. at 445. *See also Turcios v. Delicias Hispanas Corp*., 275 Fed. Appx. 879, 883 (11th Cir.2008) (reversing a dismissal and remanding the case where tax returns were not reconciled with the number of employees employed at the defendant's restaurant for purposes of determining enterprise coverage). Thus, as the Eleventh Circuit has done, this Court should consider the Plaintiff's testimony about sales, whether the business operates on a cash basis, whether labor costs are accurately accounted for on the tax returns, the overall number of employees, and the total number of tables and hours of operation of the restaurant. *Id.*

I submit, then, that the evidence proffered by Plaintiff here, when viewed in the light most favorable to her, is sufficient to create a genuine issue of material fact regarding whether the gross volume of sales meets the $500,000 threshold for the years in question: 2011 and 2012. A reasonable fact finder could conclude, based upon Plaintiff's testimony regarding cash catering sales and the overall number of employees, that the gross sales figures stated on the tax returns are not conclusive, and that gross sales were in fact higher.[6]

Thus, I submit that summary judgment is not appropriate on the issue of whether Parnos qualifies for enterprise coverage under the FLSA.

---

[6] Notably, numerous courts have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA. *See, e.g., Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc*., No. 8:07-cv-2359-T-23TGW, 2008 WL 793660, at *1 (M.D.Fla. Mar.24, 2008) ("[E]nterprise coverage embraces virtually every business whose annual gross volume of sales or business is $500,000 or more ...."); *Galdames v. N & D Inv. Corp*., No. 08-20472-CIV, 2008 WL 4372889, at *5 (S.D. Fla. Sept. 28, 2008) ("It is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA.").

### B. *Plaintiff's Evidence of Unpaid Wages*

Parnos also seeks summary judgment on the ground that Plaintiff cannot demonstrate that she worked in excess of forty hours per week. Here he argues that "Plaintiff has, to date, provided no evidence – such as documents produced in discovery, or an affidavit from another manager or coworker – to substantiate her assertions of having worked more than Defendant's Payroll Record Sheets indicate." (Doc. 69, p. 10-11). He contends that Plaintiff must provide sufficient detail about the length and frequency of her unpaid work to support a reasonable inference that she worked more than forty hours a week as she claims.

To this end, Plaintiff offers her declaration, under penalty of perjury, stating that she worked from approximately March 2010 through July 2012 as lead cook, and that she regularly worked between fifty (50) and eighty (80) hours per workweek, but was not paid overtime for the hours worked in excess of forty (40). (Doc. 72-1, ¶¶ 5-6). Plaintiff argues that a prima facie case under the FLSA can be made through an employee's testimony giving his or her recollection of hours worked, citing authority such as *Leonard v. Carmichael Properties & Management Co*., 614 F.Supp. 1182, 1186 (S.D. Fla 1985).

It is well-established that an employee who brings suit under the FLSA for unpaid overtime compensation and liquidated damages has the initial burden of proving that she performed work for which she was improperly compensated. *See Rossi v. Associated Limousine Services, Inc*., 438 F.Supp.2d 1354, 1365 (S.D.Fla.2006), *citing Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). When accurate records or precise evidence of the hours worked do not exist, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

*Rossi*, 438 F.Supp.2d at 1365, *citing The Dinh Tran v. Alphonse Hotel Corp.,* 281 F.3d 23 (2d Cir.2002).

Here, Plaintiff, without specifying the number of hours worked in any given week, declares that she "worked between fifty (50) and eighty (80) hours per workweek, but was not paid an overtime premium" for hours worked in excess of forty (40). (Doc. 72-1, ¶ 6). Meanwhile, Parnos has produced payroll records which reflect that Plaintiff was typically paid for forty hours (40) per week, with some occasional overtime compensation. (See, e.g., Doc. 69-1, p. 15-22, 23). Notably, although they are detailed, Parnos's payroll records are not accompanied by an authenticating affidavit or declaration as contemplated by Federal Rule of Civil Procedure 56(c)(4).

Based on the evidence presented, the Court finds material facts in dispute concerning whether Plaintiff performed work for which she was improperly or inadequately compensated. Plaintiff's own testimony, as stated in her sworn declaration, demonstrates that the precise number of hours Plaintiff worked are in dispute. Indeed, Parnos acknowledges this dispute, stating the facts regarding her hours and pay "have been vehemently disputed from the start of this litigation." (Doc. 75, ¶ 3). This evidence can also be viewed in the context of other evidence offered by Plaintiff, including that she was employed as lead cook, that the restaurant's operating hours were from 6:30 a.m. to 9.00 p.m., seven days per week, that she was often paid "under the table, via cash only," and that she was one of numerous employees who were paid "under the table." (Doc. 72-1, p. 2, 72-1, ¶¶ 8-9).

Despite Parnos's argument, Plaintiff's sworn declaration may not be disregarded simply because it is self-serving. *See Moon v. Technodent Nat., Inc.*, No. 5:06-cv-358-Orl-PCF-GRJ, 2008 WL 2117053, *3 (M.D.Fla. May 19, 2008) (An employee's initial burden of production is

minimal, and as a result, "self-serving" testimony is sufficient to establish a prima facie case); *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2012 WL 6093802, *1, n. 4 (S.D. Ala. December 7, 2012) (explaining that a plaintiff's "self-serving" affidavit may not be disregarded, even where it may have been drafted by counsel, "nor is there any ban on declarations that serve a declarants' own interests.").

To the extent that Parnos urges the Court to disregard Plaintiff's declaration because, as he claims, Plaintiff's testimony is not credible, such a determination is impermissible. *See Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," on summary judgment). His protests that Plaintiff has not offered sufficient proof of her claim regarding uncompensated overtime overlooks the fact that her declaration itself is record evidence.

Notably, "even in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment." *Strickland*, 692 F.3d at 1160. In the FLSA context, the Eleventh Circuit has found that a plaintiff's inability to state with precision the number of uncompensated hours worked and the days on which that work was performed does not entitle an employer to summary judgment. *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1317-1318 (11th Cir. 2007) (stating that a plaintiff may be able to demonstrate the amount and extent of their unpaid overtime as a "matter of just and reasonable inference" at trial based upon the facts); *Ebersole v. American Bancard, LLC*, No. 08-80703-CIV, 2009 WL 2524618 (S.D.Fla. Aug. 17, 2009) (citing *Allen* and denying employer defendant's motion for summary judgment based upon plaintiff's failure to independently substantiate hours worked in excess of forty hours per week); *Diaz v. Jaguar Restaurant Group, LLC*, 649 F. Supp 2d 1343, 1363

(S.D.Fla.2009) (denying defendant employer's motion for summary judgment based upon plaintiff's failure to produce evidence indicating the number of overtime hours she allegedly worked, although noting the record was "limited").

Here, therefore, Plaintiff's sworn declaration, as compared to Parnos's unauthenticated payroll records, creates a genuine issue of material fact precluding summary judgment on the issue of whether Plaintiff is entitled to unpaid overtime wages under the FLSA.

## IV. RECOMMENDATION

For the reasons explained above, I recommend that Parnos's Motion to Dismiss and/or for Summary Judgment (Doc. 69) be **DENIED**.

Recommended in Ocala, Florida on June 24, 2014.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy